IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHANCELOR TUMEY, INDIVIDUALLY; MARY TUMEY, INDIVIDUALLY; AND AMBER LOPEZ, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF AND ON BEHALF OF THE ESTATE OF DAVID LEE TUMEY , AND DAVID LEE TUMEY'S HEIR(S)-AT-LAW AND WRONGFUL DEATH BENEFICIARIES; §§§§§§§§§§§§ *Plaintiffs,* §§ vs. §§ MEDINA COUNTY, TEXAS, §§ *Defendant.* § | SA-24-CV-00083-FB |

# REPORT & RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion to Dismiss [#20] and Motion to Strike Plaintiffs' Surreply [#27]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#11]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons explained below, the undersigned will dismiss as moot Defendant's motion to strike and recommends that the Court **DENY** Defendant's Motion to Dismiss.

1

## I. Procedural Background

This civil rights action arises out of the death of David Lee Tumey ("Mr. Tumey") on February 13, 2022, while in custody at Medina County Jail. Plaintiffs are Mr. Tumey's children, Chancelor and Amber, and mother, Mary. (Am. Compl. [#19], at ¶¶ 1–3.) Chancelor and Mary sue in their individual capacities and seek all damages and remedies available to them as wrongful death beneficiaries and/or heirs. (*Id.* at ¶¶ 1–2.) Amber sues in her individual capacity and as the independent administrator of her father's estate. (*Id.* at ¶ 3.) In her individual capacity, Amber seeks all damages and remedies available to her as a wrongful death beneficiary and/or heir; in her capacity as the administrator of Mr. Tumey's estate, she asserts claims on behalf of the estate and all of Mr. Tumey's heirs and seeks all wrongful death and other damages available under the law. (*Id.*) The Amended Complaint names Medina County, Texas ("Medina County") as the sole defendant and asserts causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983") and Texas's wrongful death and survival statutes. (*Id.* ¶ 80.) After Plaintiffs filed this action in federal court, Medina County moved for a more definite statement [#6], which this Court denied. Plaintiffs subsequently filed an Amended Complaint [#19], which was followed by Defendant's Motion to Dismiss [#20], Plaintiffs' Response in Opposition to the Motion to Dismiss [#23], and Defendant's Reply in support of the Motion to Dismiss [#24]. Plaintiffs then filed a Surreply in support of their Response [#26]; Defendant filed a Motion to Strike the Surreply and Alternatively Response in Opposition to Plaintiffs' Surreply [#27]. These motions are ripe for the Court's review.

## II. Legal Standard

Defendant's motion seeks dismissal of Plaintiffs' Amended Complaint for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint

2

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court may consider a video on a motion to dismiss when it contradicts the pleading. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiffs' pleadings are based in part on three video files of the events underlying this suit and includes a summary of the videos in thirty-minute increments. In the briefing on the

3

Motion to Dismiss, Defendant does not assert that Plaintiffs' pleadings describing the events, including Plaintiffs' summary of the video footage, conflict with the videos. The undersigned has viewed the videos in issuing this report and recommendation, as the recordings are central to Plaintiffs' claims, were filed with the pleadings, depict the events underlying this lawsuit, and are referenced in the Motion to Dismiss briefing. See *Hartman v. Walker*, 685 Fed. App'x 366, 368 (5th Cir. 2017) (considering video footage at motion-to-dismiss stage under similar circumstances).

The three video files submitted by Plaintiffs span from the evening on February 12 to the evening of February 13. The undersigned notes that portions of the third video file appear to be missing and that this may be a problem with the video file. The existing portions of the video files were not contradictory with the Plaintiffs' pleadings. Because the Plaintiffs' allegations are taken as true at this stage and Defendant does not dispute the summary of the videos in their Motion to Dismiss, for purposes of this motion, the undersigned has assumed that the Plaintiffs' allegations related to the timestamps missing from the video file are accurate.

### III. Allegations in the Amended Complaint

Plaintiffs allege the following facts in his First Amended Complaint, which are not blatantly contradicted by the video evidence submitted with his pleadings. These facts are taken as true for purposes of ruling on Defendant's Motion to Dismiss.

On February 10, 2022, around 7:05 p.m., Mr. Tumey was arrested. (Am. Compl. [#19], ¶¶ 11, 14.) Officers had been dispatched to Mr. Tumey's residence after a report of a disturbance. (*Id.* ¶ 11.) Mr. Tumey appeared "jittery" and told Deputy Preston Moebius III that his roommate had been "trying to move bodies in the house" but the body would "turn to liquid"; Deputy Moebius found nobody else in the house. (*Id.* ¶ 12.) Another deputy at the scene

4

reportedly found "marijuana and paraphernalia" in Mr. Tumey's room. (*Id.* ¶ 13.) Mr. Tumey was then arrested and transported to Medina County Jail. (*Id.* ¶ 13.) His arrest report stated that he had not exhibited assaultive or violent behavior. (*Id.* ¶ 14.)

Upon arriving at the jail and beginning the booking process, jail officials alleged that Mr. Tumey had become uncooperative and displayed violent tendencies; he was then placed in a cell used as the "violent cell" or "detox cell." (*Id.* ¶¶ 15, 17) Other reports related to Mr. Tumey's arrest and death, however, explain that he was placed in this cell not due to violent behavior, but because multiple jail officials believed he was under the influence of alcohol or drugs. (*Id.* ¶¶ 24, 26, 35, 50, 63.) Plaintiffs allege that Mr. Tumey did not receive any medical assessment, mental health assessment, or treatment; he was expected to "detox" alone in the holding cell. (*Id.* ¶¶ 13, 17, 24, 26.)

Plaintiffs then describe Mr. Tumey's behavior while in the cell based on video recordings provided to them by the County.[1] (*Id.* ¶¶ 20–22.) According to the summary of the video recording, which spans from the evening of February 12 to the evening of February 13, Mr. Tumey spent an entire twenty-four-hour period lying on the cell floor, naked, and experiencing periods of trembling, shaking, and "rolling side-to-side." (*Id.* ¶ 22.) He would alternate positions frequently, including the fetal position, and appeared to get little or no sleep, eat little or no food,[2] and he never used the restroom. (*Id.*) In the minutes soon before the time Plaintiffs allege he died, Mr. Tumey "repeatedly kick[ed] his legs in circles and appear[ed] to convulse." (*Id.*)

---

[1] Plaintiffs claim that they were only given video recordings for a portion of Mr. Tumey's detainment and allege that Defendant "refused to produce" the remaining recordings or "engaged in spoliation of the video recordings." (*Id.* ¶ 21.) If Plaintiffs believe that Defendant has engaged spoliation or other sanctionable conduct, they are advised to file a separate motion on this matter.

[2] Plaintiffs dispute that Mr. Tumey was given food as frequently as the Medina County Jail administrator's report claims. (*Id.* ¶¶ 36–37.)

According to Plaintiffs, Defendant claims that jail officials conducted observation checks on Mr. Tumey every twenty minutes, which Plaintiffs' pleadings dispute. (*Id.* ¶¶ 26, 31, 57.) Plaintiffs' pleadings also include statements by Defendant's employees that jail officials were observing Mr. Tumey by watching the video feed of his cell. (*Id.* ¶ 52.) Plaintiffs were told that on the evening of Mr. Tumey's death, Sargeant Antonio Morales and Officer Jessica Zaragoza reportedly conducted the observation checks to "ensure that occupants [were] alive and well," while Officer Nichole Lutz was watching the video feeds of the cells. (*Id.* ¶¶ 50–52.) Officer Zaragoza stated that she had been told Mr. Tumey was in the "violent" cell because he was detoxing. (*Id.* ¶ 50.) The only times the video recordings show someone entering his cell while Mr. Tumey is alive are when a jail official brings, and later retrieves, a food tray; Plaintiffs allege that "the jailer does not appear to speak to [Mr. Tumey] or check on him," even though Mr. Tumey is clearly in distress. (*Id.* ¶ 22.) According to Plaintiffs, a report completed by the Medina County Jail administrator, Ariel Soliz, states that Jailer Jacob Moreno was the one who retrieved Mr. Tumey's food tray; the report allegedly states that Jailer Moreno spoke with Mr. Tumey, but Plaintiffs note that the report does not include what was said to Mr. Tumey or whether he was able to coherently answer. (*Id.* ¶¶ 32, 37.)

Plaintiffs contend that at no point did Mr. Tumey have a meaningful interaction with a jail official. They note that although the Texas Commission on Jail Standards ("TCJS") requires that detainees confined in a "violent cell" have their status reassessed every 24 hours, Mr. Tumey was not reassessed in over 68 hours. (*Id.* ¶ 62.) Plaintiffs point out that in the approximately 68 hours of his detainment in the cell, the video does not show anyone entering the cell to check on his physical or mental condition—until the jailers noticed he was unresponsive and not breathing. (*Id.* ¶ 22.) Plaintiffs allege that it took "well over two hours" for anyone to realize that

Mr. Tumey had died.[3] (*Id.* ¶¶ 27, 55.) According to Plaintiffs, the report from the jail administrator states that Sergeant Antonio Morales observed at approximately 8:19 p.m. on February 13 that Mr. Tumey was not breathing. (*Id.* ¶ 38.) Efforts by jail officials and emergency medical technicians to resuscitate Mr. Tumey were unsuccessful.[4] (*Id.* ¶ 22.)

Plaintiffs allege that the records from Community EMS, which provides emergency medical services to Medina County Jail, state that Mr. Tumey's body was "cold and cyanotic" when EMS arrived and that his upper extremities were rigid. (*Id.* ¶¶ 40–41.) Rigor mortis had already set in. (*Id.* ¶¶ 41–42.) Plaintiffs also state that Dr. Susanna Dana, M.D., conducted an autopsy of Mr. Tumey and determined that he had died due to complications from methamphetamine intoxication, which Plaintiffs do not concede. (*Id.* ¶ 43.)

After Mr. Tumey's death in the care of Medina County Jail, TCJS completed an investigation into the incident. (*Id.* ¶ 58.) TCJS found the jail had not complied with the "minimum standards" of TCJS for monitoring detainees. (*Id.* ¶ 59.) As described above, the jail's failure to reassess Mr. Tumey's condition after 68 hours of detainment in the "detox cell" violated the minimum standard of reassessing such detainees every 24 hours. (*Id.* ¶ 62.) Plaintiffs allege that at no point were staff at Medina County Jail reprimanded or retrained after Mr. Tumey's death. (*Id.* ¶ 79.)

According to Plaintiffs, this was not the first time Medina County Jail had been found by TCJS to have failed to properly monitor and assess their detainees. Plaintiffs allege that TCJS

---

[3] Plaintiffs claim that, based on the video footage, Mr. Tumey died around 5:35 p.m.; Defendant's records allege that he died around 8:20 p.m.–8:35 p.m. (*Id.* ¶¶ 22, 41, 43.)

[4] Plaintiffs assert—and the video supports—that multiple jailers attempted chest compressions and that the emergency medical technicians attached wires to his body, though the records from Community Emergency Medical Services reportedly state that he was "dead without resuscitation efforts." (*Id.* ¶¶ 22, 40, 51.)

had found the jail's monitoring deficient in at least four separate years, thereby putting the Medina County Sheriff and any other relevant policymaker on notice. (*Id.* ¶¶ 68–73, 75, 83.) Plaintiffs allege that in 2013, TCJS determined that there had been several incidents of Medina County Jail officials exceeding the maximum time interval for detainee observations. (*Id.* ¶ 68.) The same finding was allegedly also made in a 2014 report, in which TCJS documented incidents where Medina County Jail staff had exceeded the maximum observation time interval by over an hour (*Id.* ¶¶ 69–70.) In 2018, a TCJS inspector allegedly found the detainees had been allowed to "hang blankets and towels on their bunks, thus obstructing the view of detainees from cell windows" and that "none of the jailers or jail administration had received the four-hour objective jail classification training required by TCJS minimum jail standards." (*Id.* ¶¶ 71–72.) The inspector therefore recommended that the jail staff be retrained on "how to properly conduct face-to-face observations of detainees." (*Id.* ¶ 72.) Plaintiffs then allege that, once again, in 2019, TCJS found the maximum time interval between observations had been exceeded for a detainee in a "separation cell." (*Id.* ¶ 73.) TCJS again recommended that jail employees be trained on "the importance of conducting face-to-face observations" and recommended that the 30-minute face-to-face maximum observation interval be lowered to 20-minute maximum intervals. (*Id.*) Plaintiffs sought TCJS reports from 2020–2024 through Public Information Act requests but claim that Medina County refused to produce these. (*Id.* ¶ 74.)

## IV. Analysis

Section 1983 prohibits "person[s]" acting under the color of law from depriving another of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. At all times relevant to the matters in this case, Mr. Tumey was a pretrial detainee. A pretrial detainee who asserts a challenge concerning his confinement under Section 1983 invokes

the Fourteenth Amendment. *See Cadena v. El Paso City*, 946 F.3d 717, 727 (5th Cir. 2020); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). The State owes both pretrial detainees and convicted inmates the duty to provide for basic human needs, which includes a duty to provide adequate medical care and to protect from harm. *Hare*, 74 F.3d at 650.

A municipality or county can be liable for the deprivation of a pretrial detainee's Fourteenth Amendment rights. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). In alleging a case of this kind against a municipality or county, the cause of the constitutional violation is characterized either as (1) a condition of confinement, or (2) an episodic act or omission. *See Hare*, 74 F.3d at 644–45. A plaintiff may choose to plead these theories in the alternative, as Plaintiffs do here. *See Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017) (*Sanchez I*).

As explained below, Plaintiffs have adequately pleaded claims for unconstitutional conditions of confinement and episodic acts or omissions based on Defendant's failure to properly monitor or protect Mr. Tumey and to train Defendant's employees on how to do so. Defendant is only liable for those constitutional violations, however, if the allegedly unconstitutional actions "result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that municipalities are liable for constitutional violations where official policy or custom is "the moving force" behind the violation). Because Plaintiffs have sufficiently alleged that Mr. Tumey's constitutional rights were violated, the undersigned will subsequently proceed to the *Monell* analysis. The District Court should deny Defendant's Motion to Dismiss because, construing the pleadings in the light most favorable to Plaintiffs, Plaintiffs

have stated plausible Fourteenth Amendment violations and adequately pleaded municipal liability for those violations.

**A. <u>Plaintiffs have adequately pleaded unconstitutional conditions of confinement.</u>**

Defendants argue that Plaintiffs have not pleaded sufficient facts to state a claim for that Mr. Tumey was subjected to unconstitutional conditions of confinement. Conditions of confinement claims involve "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. To succeed, pretrial detainees must show "a pervasive pattern of serious deficiencies in providing for his basic human needs" and that the conditions "amount to punishment of the detainee." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009); *Garza*, 922 F.3d at 632 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). If a condition is "not reasonably related to a legitimate goal," then a court "permissibly may infer that the purpose of the governmental action is punishment." *Wolfish*, 441 U.S. at 539.

Defendant argues that Plaintiffs' complaint includes only a "general allegation of an omission" and "minor negligence claims," rather than "factual allegations of a complaint as to the general conditions, practices, rules, or restrictions of pretrial confinement." (Def. Mot. to Dismiss [#20], at 4, 9.) Defendant also contends that Plaintiffs have not made clear what "condition" is at issue that caused Mr. Tumey's death and that Plaintiffs' evidence does not concern other inmate deaths. (*Id.* at 9, 11.)

To the contrary, Plaintiffs' complaint plausibly alleges that Medina County Jail has a long-standing pattern of failing to sufficiently monitor and thus protect detainees. (Am. Compl. [#19], ¶¶ 68–73.) According to the Amended Complaint, the Texas Commission on Jail Standards ("TCJS") concluded that Medina County Jail's monitoring of detainees was deficient

in 2013, 2014, 2018, and 2019.[5] (*Id.*) The Fifth Circuit has explicitly approved of using TCJS reports as evidence for failure-to-monitor claims. *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 792 (5th Cir. 2020) (*Sanchez II*) (finding that the district court's ruling on a motion to dismiss was error due to it discounting TCJS reports as "evidence that jailers failed to monitor other detainees"). Plaintiffs also allege that this "pervasive pattern" resulted in Mr. Tumey's death; specifically, that the policy of insufficiently monitoring detainees—including failing to do adequate initial assessments, failing to meaningfully check on detainees every 20 minutes, and failing to reassess detainees in the "violent" or "detox" cell at the required 24-hour intervals—caused Defendant to fail to appreciate Mr. Tumey's emergency health crisis until it was far too late. On these alleged facts, there is "more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that Medina County Jail has a *de facto* policy for improperly monitoring detainees that is not reasonably related to a legitimate government interest.

Additionally, the County asserts that Plaintiffs' pleadings regarding unconstitutional conditions of confinement are insufficient because Plaintiffs do not allege prior incidents "concern[ing] the death of an inmate, let alone death from drug ingestion." (Def. Mot. to Dismiss [#20], at 11.) The Fifth Circuit soundly rejected this argument in a similar case where the county "rel[ied] upon the absence of evidence of another death resulting from the challenged *de facto* policy." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 875 (5th Cir. 2016). The court held that the county's reasoning "miss[ed] the crux of the [Fifth Circuit's] test: we weigh sufficient evidence *vel non* for policy implementation, not policy outcome." *Id.* At this motion-to-dismiss stage, Plaintiffs' pleadings regarding Medina County's policy implementation are sufficient.

---

[5] As described earlier, Plaintiffs allege that they attempted to obtain evaluations of Medina County Jail for 2024–2024 through Public Information Act requests, but that TCJS refused to provide them. (Am. Compl. [#19], ¶ 74.)

11

Because the Amended Complaint plausibly alleges a constitutional violation due to unsafe conditions of confinement, the Court will proceed to the *Monell* analysis after addressing whether Plaintiffs' alternative pleadings regarding unconstitutional episodic acts or omissions are adequate as well.

### B. **Plaintiffs have adequately pleaded unconstitutional episodic acts or omissions.**

Defendant also contends that Plaintiffs have not adequately pleaded facts in support of their alternative episodic act or omission claim. Cases that concern episodic acts or omissions involve "a particular act or omission of one or more officials," and "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). The actor must "know of and disregard an excessive risk to inmate health or safety." *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (citing *Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011)). For claims based on the denial of medical care, the plaintiff must have evidence that officials "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers v. Hierholzer*, 857 F. App'x 831, 833 (5th Cir. 2021) (per curiam) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

In a case with similar facts to Mr. Tumey's, the Fifth Circuit agreed with a district court's ruling that a reasonable jury could find jail officers were deliberately indifferent to the decedent's medical crisis. *Sims v. Griffin*, 35 F.4th 945, 948 (5th Cir. 2022) (affirming the denial of summary judgment on qualified immunity grounds). In *Sims*, the decedent was a pretrial

detainee who arrived at the jail "obviously intoxicated." *Id.* at 948. He was placed in the jail's detox cell, where his "medical condition steadily worsened," and "[h]e did not sleep or eat." *Id.* Despite crying out in pain and calling for help, he was given no medical attention. *Id.* And "[b]y the time officers noticed [he] was dead on the floor, rigor mortis had already set in." *Id.* at 947. The Fifth Circuit found these allegations raised a genuine dispute of material fact regarding the officers being deliberately indifferent to the decedent's health. *Id.* at 948–49, 952.

In Mr. Tumey's case, Plaintiffs have alleged that jail staff suspected that Mr. Tumey was under the influence of alcohol or drugs. (Am. Compl. [#19], ¶¶ 24, 26, 35, 50, 63.) Nonetheless, according to the pleadings, no medical evaluation was ever done. (*Id.* ¶¶ 13, 17, 24, 26.) Mr. Tumey's condition was never reassessed; he remained in the "detox" or "violent" cell for over 68 hours, allegedly without any meaningful interaction with the jail's staff. (*Id.* ¶¶ 22, 62.) Despite hours of Mr. Tumey lying naked on the cell floor, alternating between the fetal position, "bouts of tremors," "rolling side to side," and "kick[ing] his legs in circles," the jail officials did not seek out medical evaluation or treatment for him. (*Id.* ¶ 22.) When a jail official did enter his cell, it was solely to place a tray of food next to him or pick up an uneaten tray of food; they did not "speak to [Mr. Tumey] or check on him." (*Id.*) According to Plaintiffs' pleadings, when Mr. Tumey's writhing on the floor stopped, it took staff over two hours to realize he had died. (*Id.* ¶¶ 22, 27.) As was the case with the decedent in *Sims*, Mr. Tumey's body was allegedly already in rigor mortis. (*Id.* ¶¶ 41–42.)

Plaintiffs allege that various reports following Mr. Tumey's death maintain that jail officials, including Officer Lutz, Jailer Moreno, Sergeant Morales, and Officer Zaragoza, were either monitoring the video feed of Mr. Tumey's for the period of his detainment or conducting "observation checks" of Mr. Tumey every twenty minutes. (*Id.* ¶¶ 26, 31, 35, 37, 38, 41, 50, 52,

57.) As such, Plaintiffs have adequately pleaded that "the officers had a front-row seat to [Mr. Tumey's] agonizing demise but did *nothing* to stop it." *See Sims*, 35 F.4th at 952. Plaintiffs have therefore plausibly alleged that jail officials were subjectively deliberately indifferent to Mr. Tumey's suffering and medical needs.

Next, as already described in Section IV(A), Plaintiffs have also adequately alleged a "policy, custom, or rule (or lack thereof) of [Medina County] that permitted or caused the act or omission." *See Scott*, 114 F.3d at 53. Medina County Jail allegedly has a long history of failing to properly monitor detainees. (Am. Compl. [#19], ¶¶ 68–73.) And Plaintiffs allege Defendant's policy of inadequately monitoring detainees persisted at the time of Mr. Tumey's death, and that Defendant failed to train its employees on how to monitor detainees properly, despite the TCJS admonitions to correct the jail's practices. (*Id.* ¶ 79.) Such a *de facto* policy or failure to train on a proper policy could have permitted the Medina County officers to be deliberately indifferent to Mr. Tumey's medical emergency, resulting in their failure to properly monitor and protect him. Thus, the Court will proceed to the *Monell* analysis for this claim, as well.

### C. Plaintiffs have adequately pleaded municipal liability under *Monell*.

Only an official policy or custom of Medina County can expose it to liability for a violation of the decedent's constitutional rights; *respondeat superior* liability for the acts of county employees is not available. *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Municipal liability under 42 U.S.C. § 1983 therefore requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694. Plaintiffs must plead an official policy or custom "so persistent and widespread as to practically have the force of law," and thus must allege specific facts to support

the existence of such a custom. *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). A policymaker who has notice of misconduct "yet allegedly fails to take remedial action . . . arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." *Sanchez II*, 956 F.3d at 793.

As to the first element, Plaintiffs pleaded that the relevant policymaker (among others) is the Medina County Sheriff. (Am. Compl. [#19], ¶¶ 75, 83.) In Texas, "[t]he sheriff is without question the county's final policymaker in the area of law enforcement." *Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013) (per curiam) (quoting *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 244 (5th Cir. 1993)) (citing TEX. LOC. GOV'T CODE ANN. § 351.041 (West 2011)). They have also pleaded that the Medina County Sheriff was given notice of TCJS's findings of the jail's noncompliance regarding its monitoring of detainees. (Am. Compl. [#19], ¶ 69.)

Next, Plaintiffs have plausibly alleged with sufficient particularity that Defendant had a custom or practice of failing to adequately monitor detainees and of failing to properly train jailers on how to monitor detainees, as is explained in detail above. There is "no meaningful difference between the[] showings" required for a *Monell* claim ("an official policy or persistent and widespread customs") and a *Hare* conditions-of-confinement claim (acts that are "sufficiently extended or pervasive"). *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 208 (5th Cir. 2011). While some of Plaintiffs' specific contentions about Defendant's policies are thin and may not survive summary judgment, their allegations are sufficient to survive a motion to dismiss. Unlike in cases where the plaintiff's pleadings only contained facts relating to that plaintiff's own allegations, *e.g., Ratliff*, 948 F.3d at 285, or only contained conclusory allegations, *e.g., Armstrong v. Ashley*, 60 F.4th 262, 276–77 (5th Cir. 2023), Plaintiffs allege

facts with sufficient specificity—beyond just the circumstances surrounding Mr. Tumey's death—to plead a *Monell* claim. *See Peña*, 879 F.3d at 622 (explaining that "a plaintiff must do more than describe the incident that gave rise to his injury"). Moreover, like in *Sanchez II*, Plaintiffs allege that at no point were staff at Medina County Jail reprimanded or retrained after Mr. Tumey's death. (Am. Compl. [#19], ¶ 79.)

Lastly, Plaintiffs have adequately alleged that Defendant violated Mr. Tumey's Fourteenth Amendment rights by failing to adequately monitor him and protect him from harm, making the policy or custom the "moving force" behind his constitutional injury. They plausibly allege that, had Medina County Jail officials properly monitored Mr. Tumey and assessed his condition, they would have provided him with medical care sooner, thereby saving his life. (*Id.* ¶¶ 17, 79.) Because all elements of *Monell* liability are met and Plaintiffs have adequately pleaded unconstitutional conditions of confinement and episodic acts or omissions, the District Court should deny Medina County's Motion to Dismiss.

## V. Motion to Strike

Plaintiffs filed a Surreply [#26] to Defendant's Motion to Dismiss. Defendant filed a Motion to Strike and Alternatively Response in Opposition to Plaintiffs' Surreply [#27]. The undersigned did not consider Plaintiffs' Surreply in writing its Report and Recommendation. The undersigned will therefore dismiss Defendant's Motion to Strike [#27] as moot.

## VI.  Conclusion, Recommendation, & Order

**IT IS THEREFORE ORDERED** that the Motion to Strike and Alternatively Response in Opposition to Plaintiffs' Surreply [#27] is **DISMISSED AS MOOT**.

Further, having considered Medina County's Motion to Dismiss [#20], the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Medina County's Motion to Dismiss be **DENIED**.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 3rd day of October, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE